**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Application for Judicial Assistance of

*1887370 Ontario Inc.*

For an Order Pursuant to 28 U.S.C. § 1782
to Conduct Discovery for Use in Foreign
Proceedings

Case No. 25 Misc. _____

**DECLARATION OF ANDREW FAITH**
**IN SUPPORT OF *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE**
**PURSUANT TO 28 U.S.C. § 1782**

I, the undersigned, Andrew Faith, under oath and penalty of perjury, pursuant to 28

U.S.C. § 1746, and duly authorized, declare the following:

## I.    INTRODUCTION

1.    I am over the age of 18 and the facts set forth herein are based on my own

personal knowledge or on information provided to me by others. Where facts are within my

personal knowledge, I can affirm that they are true. Where the information is provided to me

by others, I state the source of my knowledge and affirm it is true to the best of my information

and belief.

2.    I am an attorney and managing partner of the law firm Polley Faith LLP

(Toronto, Canada). My law firm represents 1887370 Ontario Inc. ("Applicant"), for which Mr.

Harry Littler is a director and officer, in relation to a pending civil proceeding in Canada. I was

admitted to the Ontario Bar in 2003, and my practice includes a full range of civil litigation

matters, including complex commercial & shareholder disputes and white-collar fraud.

3.    I submit this Declaration in support of Applicant's application for an Order

pursuant to 28 U.S.C. § 1782 authorizing discovery in connection with proceedings in Canada

commenced against Defendants Michael S. Smith  (hereinafter "Michael Smith" or "Mr.

1

Smith"), CMC Capital Inc. ("CMC Capital"), and Credit Medical Corporation ("Credit Medical") (collectively the "Foreign Defendants") for the recovery of CAN $6,000,000 (approximately USD $4,34M[1]) (the "Foreign Proceeding"). I attach a true and correct copy of the Statement of Claim filed with the Canadian Court as **Exhibit 1.**

4.      Applicant seeks to obtain evidence relating to Foreign Defendants, Mr. Smith's wife, and entities beneficially owned by Mr. Smith to advance his claim on behalf of 1887370 Ontario Inc. for repayment of the sum of CAN $6,000,000 or, in the alternative, claims of fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, and oppression under Canadian law and to seize the misused assets by Foreign Defendants, and ultimately to recover his debt.

## II.      THE PENDING PROCEEDING IN CANADA

5.      Applicant, 1887370 Ontario Inc., is a corporation organized under Ontario law whose registered address is: 12800 8th Concession Road, King City, Ontario, L7B 1K4. Harry Littler, an individual and Canadian citizen, is a director and officer of Applicant.

6.      Foreign Defendant, Michael Smith, is an individual and Canadian citizen whose last known address is 6858 Casitas Pass Road, Carpinteria, CA 95842.

7.      Defendant, CMC Capital, is a corporation organized under Ontario law, with the Ontario Corporation Number 2642046, whose address is 1200 Bay Street, Unit 202, Toronto, Ontario M5R 2A5, Canada.

8.      Foreign Defendant, Credit Medical, is a corporation organized under Ontario law, with the Ontario Corporation Number, 1471807, whose address is 64 Prince Arthur Avenue, Toronto, Ontario, M5R 1B4, Canada.

9.      In or around May 2018, Harry Littler's father, Harry Littler Sr., began to discuss the possibility of a joint business venture with Mr. Smith.

---

[1] Applied exchange rate (CAN-USD): $1.38 USD = $1 CAN

2

10. On June 21, 2018, a new corporation, CMC Credit Ltd. ("CMC") was incorporated to facilitate the joint venture.

11. On July 6, 2018, HLL Trust, a trust established under the laws of Ontario, with Cidel Trust Company as its trustee, entered into a shareholders' agreement with CMC Capital to govern the relationship between HLL Trust and CMC Capital as 50% shareholders of CMC (the "Agreement"). Harry Littler's mother, Lynda Littler, is the sole beneficiary of HLL Trust.

12. Also on July 6, 2018, HLL Trust entered into a promissory note with CMC for $6,000,000. Although the promissory note reflects a principal amount of CAN $6,000,000, HLL Trust only advanced CAN $5,000,000. The remaining balance of the principal amount was instead advanced by Wingberry Farms, a corporation organized under Ontario law that is owned and controlled by members of the Littler family. The funds from Wingberry Farms were advanced under two promissory notes entered into with CMC for CAN $500,000 each, dated March 25, 2021 and April 12, 2021.

13. CMC was to operate as a consumer loan business. The income generated from the consumer loans was to fund CMC's operations and support monthly interest and dividend payments to its shareholders. CMC's business model depended entirely on its ability to originate, administer, and collect consumer loans. These loans were to be governed by individual loan agreements with third-party borrowers (the "Loan Agreements").

14. On or about December 19, 2023, Harry Littler's father resigned as director of CMC. On the same day, Harry Littler was appointed to the CMC Board as a director nominee of HLL Trust by way of a unanimous shareholder's resolution.

15. Following his appointment, Harry Littler began questioning Mr. Smith about the underlying financial position of CMC. He specifically sought information regarding how the initial capital (in the total amount of CAN $6 million) was being used and the current state of the loan portfolio. Mr. Smith provided monthly financial reports to Mr. Littler, however, he

failed to provide the underlying Loan Agreements supporting those reports, which Harry Littler repeatedly requested.

16.    In November 2024, Harry Littler identified a significant discrepancy between the "loans receivable" recorded on CMC's June 30, 2024, balance sheet and the aggregate value of booked loan contracts reported in CMC's internal loan portfolio report. Mr. Littler became concerned that funds recorded as receivables were not actually supported by underlying Loan Agreements.

17.    Mr. Smith told Mr. Littler that the funds were held in something he called "the collective", but no context was provided. In later email correspondence, Mr. Smith asserted that he could not share the Loan Agreements due to privacy obligations under the *Personal Information Protection and Electronic Documents Act* ("PIPEDA").

18.    In February 2025, interest and dividend payments to HLL Trust and Wingberry suddenly ceased without explanation or warning.

19.    On April 17, 2025, Harry Littler issued a formal demand letter for access to CMC's corporate records under section 144 of the *Ontario Business Corporations Act*, RSO 1990, c B.16 ("OBCA"). However, CMC and Mr. Smith both failed to respond.

20.    On May 2, 2025, Applicant filed a civil action in the Ontario Superior Court of Justice, Commercial List, Action No. CV250074231300-CL. Applicant moved to direct Mr. Smith and CMC to produce the corporate records, including CMC's general ledger, resolutions, communications and the Loan Agreements. On May 29, 2025, the Ontario Superior Court of Justice granted the Applicant's application and ordered Michael Smith and CMC to give access to the books and records of CMC within 5 business days of the Order, i.e. June 5, 2025. Justice Deitrich found no validity to the arguments advanced by Mr. Smith to justify withholding access to the Loan Agreements and other documents. See the Order attached as **Exhibit 2.**

4

21.    As of the date of this declaration, Mr. Smith has not fully complied with the Order. After the Court-imposed deadline, Mr. Smith provided Mr. Littler access to some records and financial documents of CMC, but the documents provided were not complete. The records that the Applicant has been able to review are sufficient to demonstrate that Mr. Smith has misappropriated the funds advanced to CMC by HLL Trust and Wingberry Farms.

22.    Based on a review of the documents and records Mr. Smith has made available to the Applicant, it is clear that CMC has not entered into a single loan agreement with any customer as contemplated by the Agreement and the promissory notes. There is not a single loan agreement under which a borrower received funds from and promised to pay the loan back to CMC and CMC effectively has no discernible assets. Instead, Mr. Smith appears to have funneled the funds advanced by HLL Trust and Wingberry Farms into his other consumer loan business, Foreign Defendant Credit Medical, a completely different entity in which CMC has no ownership interest.

### III.    NATURE OF DISCOVERY SOUGHT

23.    Applicant seeks assistance from the United States District Court for the Southern District of New York to obtain relevant and probative documentary evidence from:

(i)    Citibank, N.A.;

(ii)    The Bank of New York Mellon;

(iii)    Société Générale, New York Branch;

(iv)    HSBC Bank USA, N.A.;

(v)    BNP Paribas USA;

(vi)    JPMorgan Chase Bank, N.A.;

(vii)    Barclays Bank PLC;

(viii)    Deutsche Bank Trust Co. Americas;

(ix)    UBS AG;

(x)     Bank of America, N.A.;

(xi)    Standard Chartered Bank US;

(xii)   Commerzbank AG, New York Branch;

(xiii)  Bank of China, New York Branch;

(xiv)   Wells Fargo Bank, N.A.; and

(xv)    The Clearing House Payments Company L.L.C. ("TCH").

24.    I am advised by New York counsel that the New York Banks and TCH are commonly known to act as correspondent, intermediary, or otherwise clearinghouse banks for U.S. Dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa (collectively, the "Respondents").

25.    Applicant seeks assistance to obtain probative documentary evidence from the Respondents to recover the funds advanced by HLL Trust and Wingberry Farms Ltd. and to advance its claim for the misappropriation of those funds.

26.    I am further advised by New York counsel that the New York Banks and TCH, from whom discovery is sought, reside or are found in the Southern District of New York, within the meaning of 28 U.S.C. §1782.

27.    Applicant seeks evidence maintained by the New York Banks and TCH in New York City regarding USD-denominated wire transactions and documents relating thereto. Specifically, the discovery sought from the New York Banks and TCH is evidence of wire transfers routed through the Respondents in New York City revealing the complete picture of the movement of funds between CMC, Mr. Smith, his wife, and his entities (collectively, the "Discovery Targets"). This is crucial to uncovering the amount and location of funds held by the entities beneficially owned by Mr. Smith or otherwise transferred through them. Furthermore, by identifying transfers between Mr. Smith, and the Discovery Targets. Therefore, the discovery should assist Applicant in pleading and proving his claims against

6

Foreign Defendants in the Foreign Proceeding.

28.     The Respondents are not expected to become a party to the Foreign Proceeding, and as such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. Indeed, absent the instant Application, the discovery sought would almost certainly remain outside the reach of the Canadian Courts.

29.     Further, there is no indication that Canadian Courts would not be receptive to the documentary evidence sought through the instant Application. Such evidence is likely admissible in the Foreign Proceeding. The Application does not circumvent any proof-gathering restriction under Canadian law that I am aware of.

30.     The discovery sought to be served on the Respondents is not intrusive or unduly burdensome because it is of limited scope. Applicant seeks limited records relating to wire transactions involving Foreign Defendants, Mr. Smith's wife, and entities beneficially owned by Mr. Smith for which the New York Banks and TCH were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, RTP, Fedwire, FedNow, FedACH, or where the New York Banks and TCH otherwise facilitated interbank funds transfers, as well as documents relating thereto, for the limited period beginning July 16, 2018, through the present. I am advised by New York counsel that this period is within the Respondents' document retention policies, and the documentary evidence sought is of the type that the Respondents regularly and easily retrieve and produce as third parties or actual parties in litigation.

## IV.     APPLICANT SHOULD NOT BE REQUIRED TO GIVE NOTICE TO DEBTOR, THE DISCOVERY TARGETS, AND THE RESPONDENTS

31.     Applicant respectfully requests that it not be required to serve the Application upon (i) the Foreign Defendants, (ii) the Discovery Targets, or (iii) the Respondents. Applicant further requests that, should the Court grant this Application, Applicant not be required to serve (i) the Foreign Defendants, (ii) the Discovery Targets, or (iii) the Respondents with the order

granting the Application and the subpoenas issued to the Respondents.

32.    The discovery sought from the Respondents will be used in the Foreign Proceeding. As a result of the Ontario Court's Order for Mr. Smith to produce CMC documents and records, the Applicant has obtained evidence demonstrating that Mr. Smith has misappropriated CMC's assets for the benefit of himself and/or his other entity, Credit Medical.

33.    Therefore, notice of the Application, the order granting the Application (should the Court grant the Application), and subpoenas to the Respondents, would advance Foreign Defendants scheme by providing them the opportunity to potentially conceal or destroy evidence that could be used by Applicant in the Foreign Proceeding and/or further divert their assets and those of the entities Mr. Smith beneficially owns, and would frustrate and delay Applicant's full understanding of Foreign Defendants' movement of assets. Applicant would be significantly delayed in obtaining critical information to plead and prove its claims if the Court requires notice of the Application, the order granting the Application, and the subpoenas to the Respondents, which would ultimately prejudice Applicant.

34.    Conversely, there would be no prejudice to the party against whom the discovery is likely to be used in the Foreign Proceeding, as such party would be permitted to adjudicate the admissibility and relevance of any discovery received by Applicant in the Foreign Proceeding at the appropriate time. In the event Applicant obtains relevant evidence from the Respondents, due process will be respected and the Foreign Defendants will be able to object to the submission of such discovery into evidence in the Foreign Proceeding.

35.    In light of the foregoing, the lack of notice of the Application would not prejudice the Discovery Targets or the Respondents. Likewise, the lack of notice of the order granting the Application (should the court grant the Application) and subpoenas to the Respondents would not prejudice the Discovery Targets. Therefore, the Court should exercise its discretion and not require Applicant to give such notice.

8

## V.    CONCLUSION

36.    Considering the foregoing, Applicant respectfully requests that the Court grant the Application in its entirety.

Executed this 3rd day ___September___, 2025, in ___77 King St. W., Suite 2110, Toronto, Ontario M5K 2A1, Canada___

By: _____

Andrew Faith

9