

Monica Asher
masher@mwe.com
+1 212 547 5706

October 15, 2025

**VIA ECF**

Hon. Jesse M. Furman
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007

Re:    *In re Application of 1887370 Ontario Inc. for an Order Seeking Discovery Pursuant to 28 U.S.C. § 1782*, Case No. 25-mc-00384-JMF

Dear Judge Furman:

We represent Rhonda Niles. Ms. Niles respectfully submits this letter motion, pursuant to Local Rule 37.2 and Your Honor's Individual Rule of Practice 3.D, to quash subpoenas (the "Subpoenas") Applicant 1887370 Ontario Inc. ("Applicant") issued seeking her private financial records.

The Subpoenas were issued under the pretense of seeking records for use in a pending Canadian business dispute ("Canadian case"), but Ms. Niles is not a party to that dispute and her records are irrelevant to it. What the Subpoenas actually seek is premature asset discovery against Ms. Niles's husband, a party in the Canadian case. Despite the sensitive nature of the information sought, neither Applicant nor its counsel attempted to notify or serve Ms. Niles with Applicant's Section 1782 application or the Subpoenas themselves—despite the Court denying Applicant's request to waive service on the Subpoena targets. *See* ECF No. 9. It appears other targets were not notified. We met and conferred with Applicant's counsel, but were unable to reach a resolution, and so now move to quash the subpoenas.

The Subpoenas should be quashed because they are not "for use" in the Canadian case as required by Section 1782, they violate Ms. Niles's privacy rights, and they are unduly intrusive, overbroad, and disproportionate, seeking ***all*** of Ms. Niles's financial records rather than being narrowly tailored to any plausible connection with the actual litigants.

## I.    <u>Relevant Background</u>

On July 30, 2025, Applicant sued Defendants Michael Smith, CMC Capital Inc., and Credit Medical Corporation ("Canadian Defendants") in the Canadian case in Ontario, Canada, concerning a joint venture for a commercial loan business. *See generally* **Ex. A**, Statement of Claim. Applicant alleges $6 million was advanced to CMC Credit Ltd., a 50-50 joint venture between Applicant's predecessor and Defendant CMC Capital, as funding capital for providing consumer loans. *See id.*, ¶¶ 2, 5, 10. Applicant further alleges that instead of being used to enter loan agreements with consumers, the funds were transferred to Mr. Smith's other consumer loan business, Defendant Credit Medical. *Id.* ¶¶ 25, 27.

Hon. Jesse M. Furman
October 15, 2025
Page 2

The issue for the Canadian court is whether CMC Credit was operated in accordance with the joint venture's shareholders' agreement, or whether the funds advanced to CMC Credit were wrongfully transferred to Credit Medical and should be returned to Applicant. Despite this limited issue, Applicant subpoenaed nine financial institutions seeking banking records from 16 individuals and entities—including Ms. Niles and various entities entirely unrelated to the Canadian case. None of the requested banking records are necessary to determine the merits of that proceeding or even plausibly support it.

Ms. Niles, who is married to Mr. Smith, is not a defendant in the Canadian case, and Applicant does not allege in the Canadian case that Ms. Niles was involved in the joint venture or received any funds advanced for the joint venture. In fact, Applicant already obtained CMC Credit's financial records, and there was no evidence of activity between CMC Credit and Ms. Niles. *See* **Ex. A**, Statement of Claim, ¶ 25. Similarly, Applicant's Section 1782 application does not make the case for obtaining Ms. Niles's private financial records. The only allegation in the Section 1782 application about Ms. Niles is an unfounded and half-hearted assertion in a declaration that when Ms. Niles sold a property to an LLC in 2025, the LLC was "founded and/or controlled by Mr. Smith and/or his spouse." *See* ECF No. 3, ¶¶ 3. This innuendo is not only baseless but false. The LLC[1] that purchased Ms. Niles's property was a third-party purchaser in an arm's-length transaction.[2] **Ex. B**, Declaration of Rhonda Niles ("Niles Decl."), ¶ 4. Despite Ms. Niles having no connection to the Canadian case, Applicant now seeks, without limitation, *all* financial transfers that Ms. Niles has sent or received in the past 7 years. *See* **Ex. C-K**, Subpoenas.

## II.      Ms. Niles has Standing to Object to the Subpoenas

Ms. Niles has standing to object to the Subpoenas because she has an interest in the confidential financial information sought. *See Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) ("[T]he ultimate targets of a § 1782 discovery order issued to third parties have standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute." (citation and quotation omitted)); *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023) ("a non-party individual or entity has standing to quash a subpoena if the individual or entity is seeking to protect a personal privilege or right" and "[c]ourts in this Circuit have found that individuals[] whose banking records are subpoenaed[] have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution" (citations and quotations omitted)).

---

[1] The LLC that purchased Ms. Niles's property, 6858 Casitas Pass LLC, and its management company, First Blast Management LLC, also are Subpoena targets.  *See* **Ex. C-K**, Subpoenas. It appears Applicant did not notify these entities of the Subpoenas.

[2] The same declaration follows this baseless assertion with the implausible conclusion that, because the purchaser LLC has a single director, "the money used for Mr. Smith's property purchase is in part quite possibly misappropriated funds from CMC." But Mr. Smith was neither the buyer nor seller in the 2025 transaction. He and Ms. Niles acquired the property in 2015, *three years before* the joint venture that is the subject of the Canadian case, and Ms. Niles was the property's sole owner from November 2017 onward (also well before the joint venture). **Ex. B**, Niles Decl., ¶¶ 2-3. The suggestion that Mr. Smith acquired his interest in that property with funds advanced to the joint venture is temporally impossible.

**McDermott Will & Schulte**

Hon. Jesse M. Furman
October 15, 2025
Page 3

**III.     The Subpoenas are not "For Use" in the Canadian Case and Should be Quashed**

Section 1782 authorizes discovery "for use in a proceeding before a foreign tribunal." *See Euromepa v. R. Esmerian*, 154 F.3d 24, 27 (2d Cir. 1998) (citation omitted). The "for use" requirement mandates that the discovery be relevant and necessary to the adjudication of the merits of the foreign proceeding. *See, e.g., In re Especiais*, 2024 WL 4169550, at *4 (S.D.N.Y. Sep. 12, 2024). Applicant here cannot meet its burden to show that the requested discovery "serve[s] some use in the proceeding" and is "minimally relevant to the foreign proceeding." *See id*. (citations omitted).

Even if Ms. Niles were a party to the Canadian case, the Subpoenas improperly seek premature and overbroad asset discovery rather than discovery that is necessary for the adjudication of that proceeding. *See In re Shagang Shipping Co.,* 2014 WL 1744264, at *2 (S.D.N.Y. Apr. 28, 2014) ("[P]re-judgment discovery concerning an opposing party's assets 'is not permitted . . . unless it is relevant to the merits of a claim . . . . Rather, such discovery is properly reserved for post-judgment proceedings, when a judgment creditor seeks the information necessary to permit it to enforce the judgment." (citation omitted)); *see also Especiais*, 2024 WL 4169550, at *9 ("Granting asset discovery for post-judgment enforcement when the merits of the proceeding remain uncertain would allow any plaintiff to investigate the finances of any defendant based simply on the fact that he has brought a case."). Thus, the Subpoenas fail the "for use" requirement and should be quashed.

**IV.     Alternatively, the Court Should Exercise its Discretion to Quash the Subpoenas**

Even if the Court determines the Subpoenas have a sufficient nexus to support the "for use" requirement, the Court should quash them in its discretion. *See Jiangsu S.S. Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *7 (S.D.N.Y. Feb. 5, 2015) ("Courts deciding petitions for discovery under § 1782 have the discretion, ***but not the obligation***, to grant petitions that satisfy the statute's requirements." (emphasis added)). Here, disclosure of the full scope of Ms. Niles's banking activity constitutes an unwarranted intrusion into her private financial affairs, far exceeding the permissible bounds of discovery.

The Subpoenas seek ***all*** of Ms. Niles's banking records, including personal and confidential records with no connection to the Canadian Defendants or the Canadian case. Courts reject such fishing expeditions. *See Shagang*, 2014 WL 1744264, at *2 (if a "application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." (citation omitted); *In re an Application for an Ord. Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (if a court "suspects that the [§1782 discovery] request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request" (citation omitted)).

At minimum, the Subpoenas should be limited to records between Ms. Niles and CMC Credit—although such a limited subpoena is unnecessary as Applicant already obtained CMC Credit's records in the Canadian case and there were no records between CMC Credit and Ms. Niles.

**McDermott Will & Schulte**

Hon. Jesse M. Furman
October 15, 2025
Page 4

Respectfully,

Monica Asher

cc:       All Counsel of Record (via ECF)

Attachments

**McDermott Will & Schulte**