K ELLNER  H ERLIHY  G ETTY  &  F RIEDMAN, LLP

470 PARK AVENUE SOUTH, 7th FLOOR

NEW YORK, NEW YORK 10016

DOUGLAS A. KELLNER
CAROL ANNE HERLIHY
EUGENE F. GETTY
ALAN M. FRIEDMAN
JEANNE-MARIE WILLIAMS
THOMAS VANDENABEELE
CHARLES E. KRAUSCHE II
OLGA V. PETROVSKY
_____
DERRICK M.NG
MICHELLE D. BAZINET
JAEMYUNG JAE LEE
MERIELEN DAL RI ZIVIANI°
LOUISE GRÉGOIRE
EDI EBIEFUNG
BRENDAN SULLIVAN

TELEPHONE: (212) 889-2121
FACSIMILE: (212) 684-6224
tv@khgflaw.com

COUNSEL
MICHAEL H. SINGER
ROBERT P. MCGREEVY
HERMAN D. FARRELL III
NADA ABDELSATER λ
DMITRIY BOGORODSKIYφ

°Admitted in Brazil
Λ Admitted in Lebanon
φ Qualified in the Russian
Federation

October 21, 2025

*Filed electronically on ECF*
Honorable Jesse M. Furman
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

### *In re Application of 1887370 Ontario Inc. for an Order Seeking Discovery Pursuant to 28 U.S.C. § 1782,* Case No. 25-mc-00384-JMF

Dear Judge Furman:

We represent 1887370 Ontario Inc. ("Applicant"). We respectfully submit this letter in opposition to the letter-motion filed by Rhonda Niles seeking to quash the subpoenas (DE #12).

This motion constitutes a transparent effort by Michael S. Smith, the architect of the fraudulent scheme detailed in the Application papers, to derail the entire 28 U.S.C. § 1782 proceeding. Mr. Smith seeks to shield himself by disingenuously using his wife, Ms. Niles—a non-party to the Canadian case—as a proxy to obstruct the legitimate discovery this Court has authorized.

### I.   Ms. Niles has failed to intervene and identify any interest warranting intervention

First, Ms. Niles has not sought to intervene as mandated by Fed. R. Civ. P. 24, nor did her counsel ask whether Applicant would consent to such intervention during our meet-and-confer session. Rule 24(c) sets forth that a third party must serve a motion to intervene upon the parties to the action and a pleading setting forth the claim or defense for which intervention is sought. Ms. Niles has failed to file such motion (or even to indicate that such motion was forthcoming) as required by Rule 24(c). This is sufficient to deny intervention. *G-I Holdings, Inc. v. Baron & Budd,* No. 01 CIV. 0216 (RWS), 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002). On that basis alone, the Court should disregard the letter-motion.

Notwithstanding, Ms. Niles' letter-motion does not satisfy Fed. R. Civ. P. 24. A movant may "intervene as a matter of right under Fed. R. Civ. P. 24(a)(2)" if it satisfies the following four requirements: "(1) timely file an application, (2) show an interest in the action, (3)

demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re Bank of New York Derivative Litigation*, 320 F.3d 291 (2ⁿᵈ Cir. 2003) (internal citation omitted). "The failure to satisfy any one of them dooms the intervention." *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F3d 197 (1ˢᵗ Cir. 1998). The impairment prong is only satisfied if one of two situations occurs: (1) the disposition of the action would put the movant at a practical disadvantage in protecting its interest, or (2) the stare decisis effect of a judgment would legally preclude the would-be intervenor from protecting its interest later. *Ohio Val. Envtl. Coalition, Inc. v McCarthy*, 313 F.R.D. 10 (S.D.W. Va. 2015). "The court considers substantially the same factors whether the claim for intervention is 'of right' under Rule 24(a)(2), or 'permissive' under Rule 24(b)(2)." *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).

Ms. Niles fails to identify any *interest* warranting intervention. Her letter expresses concerns about Applicant obtaining "her private financial records" and that the subpoenas might "violate [her]'s privacy rights" (DE #12 p.1). But Ms. Niles fails to appreciate that there is no inherent privilege or right to privacy in bank records. *See United States v. Miller*, 425 U.S. 435, 440–41 (1976). This reasoning applies even more aptly here, where the financial institutions act as "intermediary banks." See *US v. Daccarett*, 6 F.3d 37, 50 (2nd Cir. 1993) ("Claimants hold accounts with [foreign] banks, which have accounts with the intermediary [US] banks. The claimants' relationship with the intermediary banks is too remote to afford the claimants any legitimate expectation of privacy in information about EFTs being received by the intermediary banks").

Furthermore, because Ms. Niles is not a party to this action or to the Canadian case, none of the discovery sought here will be used against her "interest.[1]" Because Ms. Niles lacks any legitimate interest to protect, she lacks standing to challenge the subpoenas. A party resisting discovery "does not have standing to challenge discovery directed at []third parties," absent "a claim of privilege or a proprietary interest in the subpoenaed matter." *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 520 (S.D.N.Y. 2016); *see also, e.g., Estate of Ungar v. Palestinian Authority*, 400 F. Supp. 2d 541, 555 (S.D.N.Y. 2005) (granting a third party's motion to quash regarding the subpoena directed at it, but denying its motion to quash "all other third-party subpoenas" for "lack of standing").

## II.    The subpoenas are proportionate to the needs of the Canadian case

Regardless, Ms. Niles's assertion that the subpoenas seek ***all*** of her banking records is simply false. Applicant tailored the subpoenas to cover a seven-year period, because the Promissory Note giving rise to the Canadian case was executed on July 6, 2018. The subpoenas are not only narrowly limited in time, but also in scope: they seek records from only nine financial institutions serving as intermediary banks—not as personal banking institutions—and seek only wire transfers, and not all banking records, between thirteen individuals and entities,

---

[1] As such, her claim that "neither Applicant, nor its counsel, attempted to notify Ms. Niles" is irrelevant because your Honor's Order authorizing the discovery does not require the Applicant to serve the subpoenas on each discovery target, but rather on "the party or parties against whom the requested discovery is likely to be used through any such party's counsel." DE #9. Applicant properly provided actual notice and copies of the subpoenas, the application, and all supporting materials to Mr. Smith, a defendant in the Canadian case. It is presumably through that service that Ms. Niles obtained copies of all the subpoenas she has now attached as exhibits. DE #10.

all connected to Mr. Smith, either through their close personal relation or because he controls the companies. See *In re Bourlakova*, 24-MC-71 (JPO), 2024 WL 4839047 (S.D.N.Y. Nov. 20, 2024), *affd*, 24-3187-CV, 2025 WL 1733495 (2d. Cir. 2025) (denying motion to quash a subpoena served in connection with a 28 U.S.C. 1782 application seeking "'[a]ll Documents and Communications, including any wire transfer notes, regarding transfers or settlement payments' involving Mr. Bourlakov, the Kazakovs, seven other individuals, thirty-eight entities, and nearly a hundred accounts from 'the time period of January 1, 2018 to present.'"; see also *In re Byrne*, 23-MC-048 (VEC), 2023 WL 3203811 (S.D.N.Y. May 2, 2023) (denying motion to quash a § 1782 subpoena because the request for "wire transfer records from January 1, 2016, to the present ... from 13 financial institutions regarding transactions between 17 entities and individuals" is "not only limited in time, but also in scope").

In addition, restricting discovery to records directly between Ms. Niles and CMC Credits would be ineffective, as complex financial schemes often use intermediary entities and layered transfers to obscure the true flow of funds. The absence of direct transactions in CMC's Canadian records is inconclusive and does not rule out indirect transfers through related accounts. Furthermore, the prior discovery in Canada was inherently limited to Canadian entities and cannot preclude or substitute the present U.S. discovery, which properly targets New York correspondent banks involved in USD transactions.

### III. The discovery sought is for use in the Canadian case

Finally, as further evidence that Mr. Smith is the true architect of this motion, Ms. Niles goes beyond seeking to quash the subpoenas concerning her own information, and improperly urges this Court to vacate the entire § 1782 application. She concedes that there is a pending Canadian case and even attached her own copy of the Canadian "Statement of Claim" (presumably obtained from her husband) as Exhibit A (DE #12-1). While admitting she is not a party to that proceeding, she claims that the subpoenas are not "for use" in that case. The "for use" requirement assesses the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re BonSens.org,* 95 F.4th 75, 80 (2d Cir. 2024). Ms. Niles does not assert that Applicant has no practical ability to use the subpoenaed records in the Canadian case. Instead, she speculates, without any support, that Applicant is conducting "premature and overbroad asset discovery". But there is no dispute that Applicant pursues claims of misappropriation funds. Thus, records of wire transfers between Michael Smith, his wife and entities he beneficially owns are at least "minimally relevant" to the Canadian case. See *In re Bourlakova*, No. 24-3187-CV, 2025 WL 1733495, at *2 (2d Cir. June 23, 2025), citing *In re BonSens.org,* 95 F.4th at 80.

For the foregoing reasons, the Court should deny Ms. Niles's request in its entirety.

Respectfully submitted,

Thomas Vandenabeele

CC: All Counsel of Record (via CM/ECF)